Judgment reversed.

Mr. Justice MERCUR dissented.


# Perry Township *versus* John.

1. The original construction of roads is to be governed by the topographical features, population and taxable ability of the township.

2. In making a road which was constructed on the bank of a stream it was necessary at one place to cut into a hill of rock; it was made more than wide enough for one carriage, but not for two carriages to pass safely, there were "turn-outs" at a convenient distance; two meeting carriages attempted to pass, their wheels struck each other, and one was thrown into the stream and the horses drowned. In an action against the township by the owner for the loss, the court below rejected evidence that the road could not have been made wider or protected by a wall next the stream without incurring enormous expense, such as the township could not bear. *Held* to be error.

3. The plaintiff saw the other carriage approaching some distance from the place of meeting: *Held,* that he was guilty of contributory negligence in attempting, under the circumstances, to pass.

4. The questions whether the injuries arose from the fault of the township in the condition of the road or from the necessity in the original construction of making a single track road at the place of the accident, were for the jury.

5. The rights and liabilities of municipalities in constructing highways in difficult places, at very great expense, &c., considered in this case.

6. Erie *v.* Schwingle, 10 Harris 384, distinguished.

November 16th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Greene county :* Of October and November Term 1875, No. 69.

This was an action on the case commenced January 13th 1871, by David John against Perry township, to recover for the loss of two horses, &c., which had been precipitated over the side of a road into a stream below and drowned; the accident having occurred, as he alleged, through the negligence of the supervisors in not keeping the road of a proper width and in proper repair.

The case was tried January 14th 1875, before Willson, P. J.

The road in question led to "Mt. Morris, along Dunkard Creek," and had been laid out and confirmed on the 19th of November 1833. The accident occurred at a place called the "Narrows." The road there is cut along the bank of the creek, for the most part in rock, and at the place of the accident is about eleven feet

[Perry Township *v.* John.]

wide; for a considerable distance, the width of the road is but from nine to fourteen feet wide; the supervisors had constructed passing places or "turn-outs" along the "Narrows;" one was about twenty-five yards on one side of the place of the accident, another about thirty-seven yards on the other side; the side of the road next to the creek was supported by a stone-wall built without mortar; there was no barrier or guard on that side of the road.

In the latter part of November 1870, the plaintiff was returning home from Mt. Morris with his wife in a two-horse wagon; when he reached the "Narrows" he saw a one-horse "buck wagon," driven by a boy, thirty or forty yards from him; he called to the boy, who drove to the upper side of the road "as close as he could get" and stopped. The wife got out of the wagon on the bank and took the lines to drive the horses; they moved on slowly till the hub of the hind wheel of his wagon caught the fore wheel of the boy's wagon; the plaintiff then stopped his horses, he moved his wagon over about two inches so that it would pass the other; he again moved his horses forward, his wagon was just passing the other when the horse next to the creek stepped on a sliding stone, slipped and fell, and his struggles drew the other horse and wagon into the creek; both were drowned, and the wagon and harness injured. The plaintiff stated the foregoing facts as to the accident on his examination; he said also: "I don't think the road is more than nine feet wide there; two wagons could not pass safely; I thought by being careful I could pass. * * * I have known the road since I was a boy, and it has been in the same condition at the 'Narrows,' since I have known it; * * * if I had been looking out along the road I might have seen the boy a little sooner; I did not halt when I saw him."

Other witnesses for plaintiff testified to the same facts as to the character of the road.

The defendant's witnesses testified also as to the character of the road, not varying materially from the foregoing statements.

Patrick Donnelly testified that the hill was hard to quarry out; to widen the road at the narrowest point to ten feet would leave the hill at the side of the road twenty feet high; that the wagons from the point of the accident could have backed into the "turn-out."

The defendant then offered to prove by this witness, and others, that the road at the place where the accident happened could not have been made wide enough to admit of teams passing each other with ease and safety, and that it could not have been protected on the side next to the creek by the erection of a wall or otherwise without incurring an enormous expense, such as the township could not bear. This is offered in connection with evidence already in

[Perry Township *v.* John.]

for the purpose of showing that there were convenient places of passing, and that the defendant was not guilty of negligence.

The plaintiff objected on the ground that the evidence is irrelevant, as the facts, if proved, would not amount to a defence.

The offer was rejected, and a bill of exeptions sealed for the defendant.

The plaintiff's second point and its answer were :—

2. If the plaintiff, honestly believed that he could safely pass the wagon he met by its being driven upon the bank, and the jury find from all the evidence that he exercised the ordinary and reasonable care of a prudent man in his efforts to do so, it would not be such contributory negligence as would relieve the township from liability, it being the primary cause of the accident, and the verdict of the jury should be for the plaintiff for the value of the horses and injury done to the wagon and harness, with interest from the date of the accident.

Answer : " This point is affirmed, with this instruction : that the belief therein stated must be such a belief as a man of ordinary prudence would, under the circumstances, have entertained."

The following are points of defendant and their answers :—

2. If the jury find that the road for the space of about seventy yards, embracing the place where the accident happened, by reason of the rock on one side and the creek on the other, could not have been widened or made secure on the creek side by a wall or otherwise, so as to admit of teams passing each other with ease and safety, without a vast amount of labor ; that within short distances from the place where the accident occurred there were places in the road where teams could pass each other with ease and safety, and to which teams meeting at the place of the accident could be backed without difficulty or risk ; that the road in all respects, save width and protection on the creek side, was in good condition, and that the township was in no default in not securing a change of location, then there was no negligence on the part of the defendant, and the plaintiff cannot recover.

Answer : " This point is refused."

3. If the plaintiff on meeting the buck wagon could at once see, from the width of the road, the condition of the wall, the nearness and depth of the water, the character of the teams and their drivers, &c., that he could not pass said wagon without great danger ; and if he also knew that he could avoid the necessity of passing it there by backing one of the wagons a short distance to a place where they could pass with ease, and that this could be done without difficulty or danger, he was guilty of negligence in attempting to pass where the accident occurred ; and if the loss was occasioned by such attempt, he cannot recover.

Answer : " Refused. We leave for the jury to determine what, under the circumstances, a prudent man would have done, and

also whether the plaintiff acted in the way a prudent man would have done.

The verdict was for the plaintiff for $353.91.

The defendant took a writ of error and assigned for error :—

1. The rejection of the offer of evidence.

2, 3. The answers to defendant's 2d and 3d points,

4. The answer to the plaintiff's 2d point.

*Wyly & Buchanan*, for plaintiff in error.—The road laws do not require the townships in all cases to open roads to the full extent of the width to which they are laid out, but they may take into consideration the topographical features of the country, the difficulty of keeping the road in repair without unreasonable expense and the amount of travel : Angell on Highways, sects. 257, 260 ; Howard v. N. Bridgewater, 16 Pick. 100. As to the contributory negligence of plaintiff they cited Heileman v. N. Penna. Railroad Co., 13 Wright 63 ; Pitts. & Conn. Railroad Co. v. Mc-Clurg, 6 P. F. Smith 294 ; Glassey v. Hestonville Railroad Co., 7 P. F. Smith 172 ; Pennsylvania Railroad Co. v. Zebe, 9 Casey 318 ; Powell v. Pennsylvania Railroad Co., 8 Id. 414.

*A. A. Purman* and *C. A. Black*, for defendant in error.—The regulation of highways is statutory and the statutes must be strictly complied with : Rapho Township v. Moore, 18 P. F. Smith 406 ; Shearman & Redf. on Damages, sect. 145. After a road is established the supervisors must open it and keep it repaired in a safe and skilful manner : Shearman & Redf. on Damages, sect. 364. Supervisors cannot change the route of an opened road in the smallest degree : McMurtrie v. Stewart, 9 Harris 322 ; Clark v. Commonwealth, 9 Casey 112 ; Morrow v. Commonwealth, 12 Wright 305 ; Calder v. Chapman, 8 Barr 522. Townships are liable for damages to party injured on account of a road being out of repair : 7 Barr 522. Want of funds is not an excuse : 10 Harris 384 ; Winship v. Enfield, 42 N. H. 197 ; Angell on Highways, sect. 259. The knowledge of danger by an injured person will not relieve the township : Humphreys v. Armstrong Co., 6 P. F. Smith 204. It is no excuse that by careful driving the accident could have been avoided : L. Macungie Township v. Merkoffer, 21 P. F. Smith 276. Such a road as in this case was not as safe as could be made : Shearman & Redf. on Damages, sect. 391 ; Joliett v. Varley, 35 Ill. 58 ; Hyatt v. Rondout, 44 Barb. 385.

Chief Justice AGNEW delivered the opinion of the court, June 5th 1876.

The duty of keeping public roads in repair is undoubted. But topographical features, population, and taxable ability necessarily

govern their original construction. If a township build a single track bridge over a small stream it must be kept in good repair with sufficient guards. But no one would pretend that a duty lay on the township in ordinary circumstances, to build one with double tracks and footwalks, to guard against collisions. A traveller who would wilfully enter on such a bridge with his carriage when another is crossing upon it with his wagon, could have no claim upon the township if injured by such a folly. Every one appreciates the greater safety of a double track, yet the duty so to build is one of imperfect obligation. In the more mountainous parts of the state, roads are constructed for miles along hillsides, often of solid rock, where it is impossible to open the road to a width greater than a single wagon track, except for turn-outs at intervals. Many of the roads in middle and western Pennsylvania climb high hills, from half a mile to a mile in length, to overcome the elevation, traversing a narrow roadway bounded often by a solid rock on one hand, and a steep declivity on the other. They who know the country, the mountains, gorges, streams, ravines, and chasms; those dizzy heights and profound depths, before which men pause and tremble; they who know the paucity and poverty of the population dwelling in these wilds, or in even more inhabited places, understand how vain it is to expect structures there, which population and wealth only, in narrow limits, can rear. The law has recognised this condition, and therefore provides for county bridges where townships are unequal to the cost. It recognises it also in the limitation of the power of taxation for roads to one per centum of the valuation of the taxable property. Another fact must be recognised: that roads, generally, in extent, are in inverse proportion to the population of the townships. The more sparse the population, the greater generally, is the extent of territory, and consequently the length of its roads. As population increases, municipal divisions diminish in size; and their roads diminish in length.

To apply the liability of a township for non-repair to a case of original construction, cannot be thought of. Yet this is the use made of Erie City v. Schwingle, 10 Harris 384, a case which states its own principle in the first sentence of the opinion. "The principal question (says Black, C. J.) is whether a city corporation, bound by its charter to keep its streets in repair, is liable for an injury occasioned by its neglect to do so." He cites six cases in the affirmative, not one of which is a case of original construction. This case is cited also to prove that a want of funds is not a defence. But the Chief Justice put the case on the ground that by the charter there was a power to exceed the limit, by the consent of a majority of the inhabitants, and their unwillingness to perform a duty was no excuse for its non-performance, and he said further: "I will not say that damages can be recovered for an

[Perry Township v. John.]

injury like this from a municipal corporation, which has no means at all of raising a corporate fund to repair its roads and bridges. That cannot be a legal duty which the law does not permit to be executed." How then can that be said to be the duty of a poor township which would require the immense capital of a great railroad corporation to dig down steep hill-sides and blast miles of rock, in order to build a double track wagon-road? One cent on the dollar of valuation is the limit of the power of the supervisors to tax the people for roads and bridges. The people of a township, unlike the inhabitants of a city, have no power to tax themselves. Judge Dillon notices this difference between corporations proper, such as cities and boroughs, and quasi corporations, such as counties, townships, school and road districts: Dil. on Mun. Corp. § 10, pp. 761, 762, 785, 786. In Pennsylvania the duty of road repair is statutory: Sect. 6, Act June 13th 1836; Rapho v. Moore, 18 P. F. Smith 404. Hence a liability for non-repair is recognised here: Dean v. Milford Township, 5 W. & S. 545. But in original construction of roads and bridges the townships must be governed by their means. To open a hill-side road with a double track, where it is necessary to blast rocks and dig down steep banks, often would require more taxes than the township can impose, and leave nothing for repairs. We must not forget, when looking at the question of ability, the right of the citizens to work out their taxes, a duty indolently performed often at the highest rate of wages: Miller v. Gorman, 2 Wright 309 ; Childs v. Brown Tp., 4 Id. 332. I have made a calculation of the average taxes per mile of six of the most rural townships of my own county, which had in 1870 one-third more population than Greene county, and about one-fourth less territory, and find it would not exceed twenty dollars per mile of all the roads therein. In the present case $70 were expended on the road in question within less than one-quarter of a mile, and yet effecting but a small improvement.

What are the features of this road? It is described by many witnesses as running through a long narrows, a high hill on one side, and a precipitous creek bank on the other. Its width was eight to twelve feet, in some places cut out of the solid rock. Its bed, chiefly of stone, was good, bounded by a high wall to hold up the creek side—proper to ride upon, but not to pass, and, therefore, turnouts or passing places were made at short intervals. To widen the road at its narrowest point to ten feet, required a cut in the hill-side twenty feet high, thus exhibiting the steepness of the hill, rising two feet in height to one in width of excavation. These features display the character of the narrows, and the impossibility of making a double track at any feasible expense. Having, in travelling the Seventeenth Judicial District, seen such narrow roads, I readily recognise the difficulty of making roads in such places, and where the topography of the country often forbids

29 P. F. SMITH—27

another passage. To say that a township is liable for the folly of one attempting to pass in such narrows, instead of stopping at a turnout, because it has not cut out a double-track road on one cent in the dollar of valuation, is sheer injustice.

The first and second assignments of error show how this case was tried in the court below. The defendant offered to prove that the road, at the place of the accident, could not have been made wide enough to admit of teams passing each other with ease and safety ; and that it could not have been protected on the side next the creek by the erection of a wall or otherwise without incurring an enormous expense, such as the township could not bear ; this offered, in connection with the evidence already in, showing there were convenient places of passing, for the purpose of showing that the defendant was not guilty of negligence. This was objected to as irrelevant, and if proved, not a defence, and the objections were sustained by the court. The second point of the defendant raised the same question. It reads thus : "If the jury find that the road for the space of about seventy yards, embracing the place of the accident, by reason of the rocks on one side, and the creek on the other, could not have been widened or made secure on the creek side by a wall or otherwise, so as to admit of teams passing each other with ease and safety, without a vast amount of labor ; that within short distances from the place where the accident occurred there were places in the road where teams could pass each other with ease and safety, and to which teams meeting at the place of accident could be backed without difficulty or risk ; that the road in all respects, save width and protection on the creek side, was in good condition ; and that the township was in no default in not securing a change of location, then there was no negligence on the part of the defendant, and the plaintiff cannot recover." This point was refused. These assignments of error show that the court wholly ignored the question of original construction, treating it as out of the case, or else considering the township as bound to construct a double-track road under all circumstances. Hence we are prepared for the refusal of the defendant's third point, and affirmance of the plaintiff's second point, in which the court hold substantially that the township was primarily liable for damages and John was not guilty of contributory negligence in attempting to pass when, where, and as he did. But let Mr. John tell his own story. He met a boy in a one-horse buck wagon. He says : "The boy drove to the upper side of the road, as close as he could get and stopped. I drove up to the side of his wagon—told my wife to step out on the tail end of his wagon and then up the bank ; she did so ; I threw her the check lines ; she said she could not drive ; I told her to take one line in each hand, and I would tell her which line to draw ; at that time I was at the end of the wagon, on the road ; I took the horse of the boy

[Perry Township *v.* John.]

by the bridle to see if I could not make it get up on the bank; it put one foot up, and then came back into the road; I told the boy to take his horse by the bridle and hold it, and I thought we could pass; I told my wife to move the horses slow, and if the wagon was about to slide over I would hold it; I spoke to my horses; they started; they moved forward until my hind hub caught his fore tire; I spoke to the horses and they stopped; I moved the wagon over about two inches, just so it would pass; I again spoke to the horses, and my hind hub was just about passing his fore wheel when the mare slipped off into the creek. I left the wagon and ran around to the near horse to pull him square across the road to help the mare to rise again, but before I got to the bank the mare made a struggle and went over and dragged the near horse with her into the creek. The wagon turned upside down once, and the next time was in the water."

A more foolish attempt to pass another on a narrows cannot well be conceived. The court ought to have received the evidence and submitted the question of fact to the jury whether the injuries arose from the fault of the township, in the condition of the road, or from the necessity, in the original construction, of making a single-track road at this place.

Judgment reversed and a *venire facias de novo* awarded.